/3

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 9 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| MARIA T. COOKE, Individually and<br>as representative of the Estate of<br>CHESTER J. COOKE, deceased,<br>and ROSANNA CHAMPION as<br>next friend of GLENN ALEXANDER<br>COOKE, a minor,<br><br>    v.<br><br>UNITED STATES OF AMERICA. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. B-01-188

UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION
TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PAGE

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING..........................  1

STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT........................  1

SUMMARY OF THE ARGUMENT......................................................................................  2

ARGUMENT.......................................................................................................................  2

I.  BECAUSE PLAINTIFFS HAVE CONCEDED THAT PABLO GARZA
    WAS NOT ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT,
    THE UNITED STATES CANNOT BE HELD LIABLE UNDER THE
    FTCA FOR HIS ALLEGED CONDUCT..................................................................  2

II. BECAUSE INS SUPERVISORS DID NOT HAVE A DUTY TO CONTROL
    PABLO GARZA WHILE HE WAS ACTING OUTSIDE THE SCOPE OF
    HIS EMPLOYMENT, THE UNITED STATES CANNOT BE HELD
    LIABLE FOR THEIR CONDUCT UNDER THE FTCA..........................................  3

III. PLAINTIFFS HAVE NOT DEMONSTRATED THAT THE DECEDENT'S
     DEATH WAS PROXIMATELY RELATED TO THE ALLEGED
     NEGLIGENCE OF THE INS....................................................................................  8

CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .............................. 8

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ...................................................... 8

*Oreman Sales, Inc. v. Matsushita Electric Corporation of America*, 876 F.
    Supp. 1174 (E.D. La. 1991) ...................................................................................... 6

*Porter v. Shearson Lehman Brothers Inc.*, 802 F. Supp. 41 (S.D. Tex. 1992) ................. 6

*Ryman v. Office & Professional Emp. Intern. Union Local No. 66*, 628 F.
    Supp. 421 (E.D. Tex. 1985) ...................................................................................... 8

*Williamson v. U.S. Department of Agriculture*, 815 F.2d 368 (5th Cir. 1987) ................. 8

## STATE CASES

*Ambrosio*, 20 S.W.3d 262 (Tex. App. 2000) ..................................................................... 9

*Continued Care, Inc. v. Fournet*, 979 S.W.2d 419 (Tex. App. 1998) ........................... 10

*Cowart v. Kmart Corporation*, 20 S.W.3d 779 (Tex. App. 2000) ..................................... 9

*DeLuna v. Guynes Printing Company of Texas*, 884 S.W.2d 206 (Tex. App.
    1994) ................................................................................................................... 3, 5

*Edwards v. Silva*, 32 S.W.3d 713 (Tex. App. 2000) ......................................................... 6

*J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632 (Tex. App. 1993) ..................................... 5

*Jenkins v. Kemlon Product & Development Co.*, 923 S.W.2d 224 (Tex. App.
    1996) ....................................................................................................................... 5

*Moore v. Times Herald Printing Co.*, 762 S.W.2d 933 (Tex. App. 1988) ....................... 3

*Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983) ............................... 4, 5, 6

*Peek v. Equipment Services, Inc.*, 906 S.W.2d 529 (Tex. App. 1995)............................... 3

*Pinkham v. Apple Computer, Inc.*, 699 S.W.2d 387 (Tex. App. 1985) ........................ 3, 5

*Simmons v. Flores*, 838 S.W.2d 287 (Tex. App. 1992) ..................................................... 9

*Smith v. M System Food Stores*, 156 S.W.2d 112 (Tex. 1957)............................................3

*Story Services, Inc. v. Ramirez*, 863 S.W.2d 491 (Tex. App. 1993) ................................. 9

## FEDERAL STATUTES

18 U.S.C. § 654 ................................................................................................ 8

F.R.C.P. 26(a)(2)(B) ......................................................................................... 8

Fed.R.Evid. 702 and 703 ................................................................................. 8

28 U.S.C. §§ 1346(b), 2671-2680 ................................................................... 1

<u>STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING</u>

Plaintiffs filed this action against the United States purporting to invoke jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, for the wrongful death of Glenn Cooke. (*See* United States' Memorandum in Support of its Motion to Dismiss or, in the Alternative, for Summary Judgment, Statement of the Nature and Stage of the Proceedings, p. 1.) The United States moved to dismiss or, in the alternative, for summary judgment, and plaintiffs have filed a response and three supporting exhibits, including the affidavit of Eduardo Payan.

<u>STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT</u>

I.   Whether the United States can be held liable for the off-duty conduct
     <u>of an employee who was not acting within the scope of his employment</u>

   1.   Supporting authority: *See* United States' Memorandum in Support of its

        Motion to Dismiss or, in the Alternative, for Summary Judgment, pp. 1-2.

   2.   Standard of Review: This is an issue of law.

II.  Whether the United States had a duty to control its employee's
     <u>conduct while he was acting outside the scope of his employment</u>

   1.   Supporting authority: *See* United States' Memorandum in Support of its

        Motion to Dismiss or, in the Alternative, for Summary Judgment, p. 2.

   2.   Standard of Review: This is an issue of law.

III. Whether the death was proximately
     <u>related to the alleged negligence of the INS</u>

   1.   Supporting authority: *See* United States' Memorandum in Support of its

        Motion to Dismiss or, in the Alternative, for Summary Judgment, p. 2.

1

2.    Standard of Review: This is an issue of law.

## SUMMARY ARGUMENT

This suit must be dismissed because no action by a government employee acting within the scope of employment caused this tragic death. Plaintiffs' response fails to cure the defective nature of their claims. First, because plaintiffs concede that Pablo Garza was not acting within the scope of his employment at the time of the event in question, their *respondeat superior* claim based on his alleged negligence fails. Second, because plaintiffs have not satisfied the requirements for imposing a duty upon INS supervisors to control Pablo Garza's conduct when he is not working, their *respondeat superior* claim based on the supervisors' alleged negligence also fails. Finally, assuming *arguendo* that Pablo Garza's supervisors were negligent, plaintiffs have not shown that said negligence was the proximate cause of the decedent's death.

## ARGUMENT

I.    BECAUSE PLAINTIFFS HAVE CONCEDED THAT PABLO GARZA WAS NOT
      ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT, THE UNITED STATES
      CANNOT BE HELD LIABLE UNDER THE FTCA FOR HIS ALLEGED CONDUCT

Plaintiffs' argument that the United States can be held liable under a *respondeat superior* theory of liability for Pablo Garza's negligence is without merit because they have effectively conceded that his conduct fell outside the scope of his employment. Specifically, they have not refuted the United States' points that on the day the decedent was shot, Pablo Garza was not on duty, that his activities on that day had no connection to INS authority, business or objectives, and that the death of the decedent resulted from a personal dispute between two private parties.

Based upon Texas law, when the conduct is unrelated to the master's business and "is performed as a resentment of insults, or in the furtherance of personal animosities of the servant,

2

the master is not liable." *Peek v. Equipment Services, Inc.*, 906 S.W.2d 529, 531 (Tex. App.

1995), *quoting Smith v. M System Food Stores*, 156 S.W.2d 112, 114 (Tex. 1957).

Because Pablo Garza's conduct fell outside the scope of his employment, the United

States cannot be held liable for his negligence under the FTCA.

II.    BECAUSE INS SUPERVISORS DID NOT HAVE A DUTY TO CONTROL
       PABLO GARZA WHILE HE WAS ACTING OUTSIDE THE SCOPE OF HIS
       EMPLOYMENT, THE UNITED STATES CANNOT BE HELD LIABLE
       FOR THEIR CONDUCT UNDER THE FTCA

Plaintiffs' response fails to show that this case falls within the narrow and limited

circumstances upon which Texas courts have imposed an actionable duty upon an employer to

control an employee whose conduct falls outside the scope of his employment.   In order to

impose such a duty, a plaintiff must demonstrate that (1) the employee is on the employer's

premises or is using the employer's chattels and the employer (2) "knows or has reason to know

that he has the ability to control his servant," and (3) "knows or should know of the necessity and

opportunity for exercising such control." *DeLuna v. Guynes Printing Company of Texas*, 884

S.W.2d 206 (Tex. App. 1994); *Moore v. Times Herald Printing Co.*, 762 S.W.2d 933 (Tex. App.

1988); *Pinkham v. Apple Computer, Inc.*, 699 S.W.2d 387 (Tex. App. 1985).

Here, plaintiffs do not allege that Pablo Garza was on the premises of INS and it is

uncontested that he was not using an INS chattel–the gun–at the time the decedent was shot.

(*See* Cmplt. ¶¶ 6, 8.)  It is also clear that the firearm was used only by his son who fired the shot

that killed the decedent.  *Id.*  Second, because Pablo Garza was off-duty and not on INS

premises, the INS had no ability to control his conduct while he was engaged in his personal

pursuits.  Third, plaintiffs' response does not set forth any circumstances which, if proved, would

3

establish that the INS reasonably should have known of any necessity and opportunity for exercising control over Pablo Garza at the relevant time.[1]  Indeed, the response does not contend that the INS reasonably should have known of the purely personal dispute between John Garza and Glenn Cooke that led to the shooting.

Instead, plaintiffs support their negligent supervision claim by arguing that INS supervisors had the "power to control" Pablo Garza's off-duty conduct by enforcing the rule that the "[c]arrying of a firearm while not in official capacity is prohibited."  (Plaintiffs' Response, pp. 3-5, citing *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983)).  Plaintiffs' argument is without merit for two reasons.  First, the mere failure to enforce such a rule by INS supervisors to control the off-duty conduct of Pablo Garza would not satisfy the requirements set forth in *Otis* and its progeny for imposing liability upon an employer.  Second, the factual premise that such a rule was in effect on the day in question is mistaken.

In *Otis*, an employee who had a known alcohol problem was instructed to leave work after his supervisor became aware of his extreme state of intoxication.  While driving home, the

---

[1]      The entirety of the Complaint's allegations regarding INS supervisors is set forth in paragraphs 8 and 9, which state:

> At all relevant times the Government had specific rules regarding safe storage, use and security of government-issued firearms.  These rules specifically forbade employees, such as Pablo Garza, from carrying a firearm when not in official capacity and when there was no probability that it might be needed, and to store firearms so as to prevent unsafe handling or theft.

> \*     \*     \*

> In the instant case the government negligently failed to supervise Pablo Garza and to properly use, handle and store the weapon in question under the doctrine of Respondeat Superior.  The government was further negligent in failing to enforce its own rules regarding safe use and storage of its firearms.

4

employee struck another vehicle, killing its passengers. Based on these facts, the Texas Supreme Court recognized an employer's duty to unknown third parties injured as a result of the employer's _affirmative_ act of sending the employee home knowing that he was intoxicated, which imposed a duty upon the employer to proceed with reasonable care to prevent the employee from causing unreasonable risk of harm to others. _Otis_, 668 S.W.2d at 311.

Texas courts following _Otis_ have reiterated that such a duty is imposed in an employer-employee context only when the employer undertakes some _affirmative_ act of control at the time the employer realizes the employee is incapacitated. _See DeLuna v. Guynes Printing Co. of Texas_, 884 S.W.2d 206, 210 (Tex. App. 1994) (upholding summary judgment in favor of employer where employer took no affirmative steps to control behavior of employee who was drinking alcohol in parking lot on or adjacent to employer's premises); _J & C Drilling Co. v. Salaiz_, 866 S.W.2d 632, 639 (Tex. App. 1993) (finding employer not responsible to third parties for accident caused by exhausted employee where employer did not undertake any affirmative action to control employee or place employee on public highway in exhausted state); _Pinkham v. Apple Computer, Inc._, 699 S.W.2d 387, 390 (Tex. App. 1985) (affirming summary judgment in favor of employer because employer did not exercise control over employee who became intoxicated at company party).

There is no merit to plaintiffs' argument that the United States can be held liable based on the INS supervisors' failure to enforce the rule Pablo Garza was allegedly violating while he was off-duty. (_See_ Plaintiffs' Response, pp. 6-7.) Texas courts have refused to impose a duty upon an employer whose course of action was "inactivity" as opposed to affirmative conduct that had "foreseeable adverse consequences." _See Jenkins v. Kemlon Prod. & Dev. Co._, 923 S.W.2d 224,

5

226 (Tex. App. 1996); *Edwards v. Silva*, 32 S.W.3d 713, 717 (Tex. App. 2000), citing *Otis*, 668

S.W.2d at 309-10.[2]

The factual premise for plaintiffs' position is false. The nub of plaintiffs' argument is that

Pablo Garza violated INS rules when he kept his service-issued firearm in his car when he was

off-duty. (*See* Plaintiffs' Response, pp. 4, 8, 9-10, 12; Cmplt. ¶¶ 6-9.)   Plaintiffs base this

argument on the affidavit of Eduardo Payan.   *Id.*   Mr. Payan avers that "the most important rule

is that I.N.S. prohibits dentention [sic] officers from carrying government-issued weapons while

off-duty." (Plaintiffs' Response, Exhibit 2, p. 2.) To support this assertion, Mr. Payan relies on

two documents attached to his affidavit. (Plaintiffs' Response, Exhibit 2, p. 2, attachments

entitled : "Control, Usage and Handling of Firearms and Devices," which is not dated; and

"Weapons Control," which is dated July 15, 1991.) The rule set forth in these documents,

however, was superceded by the "INS Firearms Policy," which was put into effect on August 8,

---

[2]      Plaintiffs further argue that to the extent they are required to show that the INS
supervisors "knew or should have known that Pablo Garza negligently used, carried or stored the
weapon while off-duty," they request an opportunity to conduct discovery. (Plaintiffs' Response,
p. 9.) Such discovery, however, would be fruitless because the event in question apparently
occurred on private property on a day when Pablo Garza was off-duty. (*See* Declaration of
Rosemary Gonzalez, ¶ 4; Cmplt. ¶¶ 6, 8.)   Discovery to determine the knowledge of the
supervisors would only be useful if, like in *Otis*, Pablo Garza was on INS premises or in the
presence of his supervisors while he was negligently handling his firearm on the day in question.

Moreover, plaintiffs are not entitled to go on a discovery fishing expedition in the hopes
of uncovering facts that are required to support their cause of action without providing a bonafide
basis for initiating such discovery. *See Porter v. Shearson Lehman Brothers Inc.*, 802 F. Supp.
41, 61 (S.D. Tex. 1992) ("[c]onclusory statements by his attorney are not evidence; nor is his
lawyer's sworn affidavit laundry listing of what he believes he can prove if allowed to go on a
discovery 'fishing expedition'"); *Oreman Sales, Inc. v. Matsushita Electric Corporation of
America*, 876 F. Supp. 1174 (E.D. La. 1991) (court refused to allow plaintiff to "conduct a
fishing expedition for discovery" when he has "shown no *valid* basis for needing more discovery
before it can properly oppose [defendant's] motion").

1996.

The "INS Firearms Policy" specifically permits detention enforcement officers to carry service-issued firearms when they are on and off-duty. Section 5A of the policy states:

5.   Service Officers Authorized to Carry Firearms:

    A.   The following Immigration Officers . . . are authorized and designated . . . to carry firearms, during duty and **non-duty hours** . . .

        (4)   **Detention Enforcement Officers** . . . .

(*See* Declaration of Dave P. Peter, Tab 1, emphasis supplied.) Section 5A was in effect when the event in question occurred, *i.e.*, April 18, 1998. *Id.*

Accordingly, Mr. Payan's averment that INS rules prohibited detention enforcement officers from carrying firearms while they are off-duty is simply mistaken. Consequently, plaintiffs' argument that the "[f]ailure to comply with this prohibition [of INS officers not being allowed to carry firearms when they are off-duty] subjects the employee to reprimand or termination," Plaintiff's Response, p. 4, is without merit because it is premised on a superceded INS firearms rule. In addition, plaintiffs' argument that the INS could discipline its detention officers for off-duty conduct that violated the provisions of the Officer's Handbook is without merit. (Plaintiffs' Response, pp. 4-5, citing the Officer's Handbook, Exhibit 3.) The Officer's Handbook is not relevant to the issues of this case because it does not refer to whether service-issued weapons may be carried by detention enforcement officers when they are not working, which is the focus of plaintiffs' Complaint.[3]

---

    [3]    Mr. Payan's averments regarding Pablo Garza's personal life and professional reputation, *see* Plaintiffs' Response, Exhibit 2, p. 4, are not relevant to whether detention enforcement officers are authorized to carry firearms while they are off-duty. Moreover, these averments are inadmissible hearsay because Mr. Payan does not aver that he has personal

Because plaintiffs have failed to demonstrate that the INS had a duty to control Pablo

Garza's conduct when he was not working, their negligent supervision claim fails.

III.   PLAINTIFFS HAVE NOT DEMONSTRATED THAT THE DECEDENT'S DEATH
       WAS PROXIMATELY RELATED TO THE ALLEGED NEGLIGENCE OF THE INS

Assuming *arguendo* that the INS supervisors were negligent in failing to properly

supervise Pablo Garza, plaintiffs' argument that providing Pablo Garza with a firearm, which he

carried off-duty in violation of INS rules, was a "substantial factor" in causing the decedent's

---

knowledge regarding these matters. *See Williamson v. U.S. Dept. of Agriculture*, 815 F.2d 368,
383 (5th Cir. 1987) (affidavits that do not comply with Rule 56, *i.e.*, are not based upon personal
knowledge or contain inadmissible evidence, "are entitled to no weight"); *Ryman v. Office &
Professional Emp. Intern. Union Local No. 66*, 628 F. Supp. 421, 425 n. 4 (E.D. Tex. 1985)
(affidavit based upon inadmissible hearsay does not raise a material fact). Nor could Mr. Payan
have known Pablo Garza's reputation in the law enforcement community in April 1998 because
Mr. Payan was not a part of that community at that time. Rather, Mr. Payan was in federal
custody for violating 18 U.S.C. § 654, embezzling government property for his own personal use,
from January 28 through June 16, 1998, and for several other time periods until he was released
on November 16, 2000. (A certified copy of the Judgment in a Criminal Case, captioned *United
States v. Eduardo Payan*, is attached at Tab 2; the Declaration of Allen R. Steward and a true and
correct copy of the Public Information Inmate Data record for Eduardo Payan is attached at Tab
3.)

Furthermore, the opinions asserted by Mr. Payan should be disregarded for several
reasons. First, plaintiffs have failed to comply with the requirements set forth in F.R.C.P.
26(a)(2)(B) to proffer Eduardo Payan as an expert. In addition to disclosing the expert's opinions
and the supporting factual bases, this rule also requires the disclosure of the expert's
qualifications to render opinions, his publications, compensation, and a listing of other cases
within which he has testified, which plaintiffs have failed to disclose. Second, Mr. Payan cannot
render any expert opinions regarding INS rules and practices in this case for the time period in
question, *i.e.*, April 18, 1998, because any knowledge he had was not current as of 1998. *See
Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (expert "testimony is
admissible only if it is both relevant and reliable"); *Kumho Tire Co. v. Carmichael*, 526 U.S.
137, 140 (1999) ("held that the Federal Rules of Evidence 'assign to the trial judge the task of
ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task
at hand"); *see also*, Fed.R.Evid. 702 and 703.

death, Plaintiffs' Response, p. 10, is specious.

Plaintiffs' response fails to present any supporting legal authority for the proposition that such negligence could be a "substantial factor" in causing injuries to a third party by a criminal. In fact, Texas case law has found to the contrary, *i.e.*, such negligence is too remote and attenuated from the injuries caused by criminal conduct. *See Ambrosio v. Carter's Shooting Center*, 20 S.W.3d 262, 266 (Tex. App. 2000) (court held that the "failure to exercise care in the storage and display of [defendant's] firearms is too remote and attenuated from the criminal conduct of the three car jackers [who acquired the defendant's stolen weapon] to constitute a legal cause of injury to either [plaintiffs' decedent] or his parents").

Likewise, the alleged negligence of Pablo Garza's supervisors in failing to enforce the INS rule is too remote and attenuated from the criminal conduct of Pablo Garza's son who actually caused the decedent's death. Moreover, as noted earlier, the rule plaintiffs rely upon was not in effect on the day in question.

Plaintiffs also argue, again without any supporting legal authority, that "it is totally foreseeable, if a loaded gun is not properly used, carried or stored, that someone can be seriously injured," Plaintiffs' Response, pp. 7, 11-12, like the decedent. This proposition is contrary to Texas law. Texas courts repeatedly have held that for tort purposes it is not foreseeable that injuries would occur as the result of the negligent handling, storage, or maintenance of potentially dangerous instrumentalities, such as a car, firearm, or ammunition, which were used by criminals to cause injuries to third parties. *See Cowart v. Kmart Corporation*, 20 S.W.3d 779 (Tex. App. 2000) (ammunition); *Ambrosio*, 20 S.W.3d 262 (Tex.App. 2000) (firearm); *Simmons v. Flores*, 838 S.W.2d 287 (Tex. App. 1992) (automobile); *Story Services, Inc. v. Ramirez*, 863

9

S.W.2d 491 (Tex. App. 1993) (automobile).  Accordingly, plaintiffs' proximate cause argument

is nothing more than a view of the facts in "retrospect, theorizing an extraordinary sequence of

events whereby defendant's conduct brings about the injury." *Continued Care, Inc. v. Fournet*,

979 S.W.2d 419, 421 (Tex. App. 1998).

Because the decedent's death was not  legally foreseeable to the INS and the INS's

supervisors' alleged conduct was not the "but for" cause of that death, the proximate cause

element of plaintiffs' negligence claim is lacking.

/ / /

/ / /

/ / /

<u>CONCLUSION</u>

For the foregoing reasons, the United States' motion to dismiss or, in the alternative, for

summary judgment should be granted and plaintiffs' Complaint should be dismissed with

prejudice.

Respectfully submitted,

ROBERT D. McCALLUM, JR.
Assistant Attorney General
Civil Division

MICHAEL T. SHELBY
U.S. Attorney
Southern District of Texas

PHYLLIS J. PYLES
Assistant Director, Torts Branch
Civil Division

Dated: **4/18/02**

STEPHEN E. HANDLER
Attorney-in-Charge
Reg. No. 6188141 (Illinois)
Trial Attorney, Torts Branch
Civil Division
U.S. Department of Justice
Benjamin Franklin Station
P.O. Box 888
Washington, DC 20044
(202) 616-4279 (Office)
(202) 616-5200 (Facsimile)
Attorneys for the United States

11

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA T. COOKE, Individually and | ) | |
| as representative of the Estate of | ) | |
| CHESTER J. COOKE, deceased, | ) | |
| and ROSANNA CHAMPION as | ) | |
| next friend of GLENN ALEXANDER | ) | |
| COOKE, a minor, | ) | Civil Action No. B-01-188 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA. | ) | |
| | ) | |

DECLARATION OF DAVID P. PETER

1.      I, David P. Peter, am the Special Assistant to the Executive Associate Commissioner for Field Operations of the Immigration and Naturalization Service ("INS").  I have held this position since September 2000, and I have served as an immigration officer in a variety of capacities since February 1977.

2.      In this position, in addition to numerous other duties, I am responsible for the custody and maintenance of the policies and procedures of the INS.  I remain up to date on changes in the INS Firearms Policy, in particular, as a representative of the INS Firearms and Force Board.

3.      The "INS Firearms Policy, August 1996, Administrative Manual Section 20.012," superseded all previous policies regarding the INS' firearms program and was effective on August 8, 1996, and was in effect on April 18, 1998.

4.      True and correct copies of Subsection 5, "Service Officers Authorized to Carry Firearms," and Subsection 6, "Guidelines for Carrying Firearms," are attached to this declaration.

FURTHER AFFIANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 16, 2002.

DAVID P. PETER

J.    Range Safety Officers

(1)    Authorizing Officials shall designate INS officers to perform collateral duties as Range Safety Officers. Designation of these officers shall be based on the following criteria:

(1)    A knowledge of firearms and firearms safety;

(2)    An aptitude for maintaining firearms safety during training, practice and qualifications.

(2)    Range Safety Officers are responsible for assisting Firearms Instructors during firearms training, practice or qualification sessions.

K.    Individual Service Officers Authorized to Carry Firearms

Individual Service officers authorized to carry firearms pursuant to this policy are responsible for being familiar with this policy and adhering to all relevant aspects thereof.

5.    Service Officers Authorized to Carry Firearms:

A.    The following Immigration Officers who have successfully completed Basic Immigration Law Enforcement Training, as defined in Subsection 3.C., are authorized and designated to exercise the power conferred by Section 287(a) of the Immigration and Nationality Act to carry firearms, during duty and non-duty hours, provided they are individually qualified by training and have demonstrated their ability to handle and safely operate the firearms that they are permitted to carry; maintain proficiency in the use of firearms; and adhere to the provisions of the policy governing the use of force.

(1)    Border Patrol Agents, including Border Patrol Aircraft Pilots;

(2)    Special Agents and Immigration Agents;

(3)    Deportation Officers, including Deportation Aircraft Pilots;

(4)    Detention Enforcement Officers;

(5)    Immigration Inspectors;

(6)    Adjudications Officers (See note below);

NOTE: The authority of Adjudications Officers to carry a firearm is specifically limited to those officers who have successfully completed the Service's Basic Marksmanship Instruction and Practical Pistol Courses as defined in Subsection 3.E. and are assigned to perform duties as an Inspector in a location which requires the carrying of a handgun. This authority permits transporting a handgun to and from such duty assignments, including training and quarterly qualifications, but may not be expanded to include carrying the handgun while off duty. Adjudications Officers are temporarily issued handguns only for those assignments which require the carrying of a handgun. Upon return to the office, the handgun will be turned in. Each office employing Adjudications

Officers to perform inspectional duties requiring the carrying of a handgun will maintain a sufficient quantity of unassigned Inspections Program handguns for this purpose.

    (7)    Immigration Officers and other Service employees who are granted the authority to carry a firearm, either individually or as a class, by the Commissioner with the approval of the Deputy Attorney General; and,

    (8)    Officers who are responsible for supervising the activities of those officers listed above.

6.    <u>Guidelines for Carrying Firearms</u>:

A.    (1)    Service authorization to carry a personally-owned handgun during duty hours or non-duty hours shall be limited specifically to Service-approved handguns in accordance with Subsection .18 and .Appendix .I (A and .B). Where an officer is authorized under Subsection 21 to carry a non-standard Service-issued or approved handgun <u>exclusively</u> for an approved undercover operation, the officer is authorized to carry the handgun during duty and non-duty hours until such time as the undercover operation is completed or terminated.

B.    (1)    Service officers listed in Subsection 5.A.(1)-(8) are <u>required</u> to carry a Service-issued or approved handgun, and may be required to carry other firearms, during duty hours in the performance of their normal duties.

    (2)    Exceptions to this requirement are:

        (a)    Immigration Inspectors who were employed prior to November 1, 1989, and were granted a written personal exemption from the requirement prior to that date; and,

        (b)    Adjudications Officers who are not assigned to conduct inspections.

    (3)    This subsection is not intended to require a Service officer to carry a handgun or other firearm while performing duties where the carrying of a firearm is inappropriate, such as performing routine office work, testifying in court, etc.

    (4)    Additionally, as outlined in Subsection 17.B., except in emergency situations, officers may decline to carry a longarm.

C.    Service-issued or approved firearms shall be carried loaded with the Service-designated number of rounds for that firearm. Only Service-issued ammunition is authorized for duty carry and use by INS officers.

D.    As described in Subsection 24, INS officers must be able, at any time, to demonstrate an acceptable level of proficiency with each type of firearm they are authorized to carry.

E.    INS officers must be able to demonstrate an acceptable knowledge of the elements necessary to justify the use of deadly force.

F.    The authority of either a single officer or a group of officers to carry a firearm during duty and/or non-duty hours may be withdrawn or restricted by the Authorizing Official when the withdrawal



*Administrative Manual Section 20.012 — INS Firearms Policy*           11



or restriction is in the best interests of the Service and/or the officer(s). A written notification, including a statement of the reason(s) for the revocation, shall be served upon the officer(s) as soon as practicable, and may either precede or follow the action. In all cases where the authority of an officer to carry a firearm while in the performance of duty is withdrawn or restricted, supervisors will ensure that the officer is not assigned to duties that normally require the carrying of a handgun.

G.    Except as provided herein, Service officers shall carry only one handgun on their person at a time. If an officer needs to carry two handguns at the same time, the officer must obtain written permission from his or her Authorizing Official prior to doing so. Authorization to carry more than one handgun will be based on factors including, but not limited to, types of duty performed, location of assignment, and justification submitted. Such written authorizations may be continuing in nature, and may apply to more than one officer, such as a group of officers assigned to the same type of duty or assignment. A copy of all such authorizations shall be placed in the Official Personnel File of each of the officers authorized to carry two handguns at the same time. A copy shall also be provided to the local Senior Firearms Instructor and the National Firearms Unit.

H.    Authorizations for personally-owned handguns granted prior to November 1, 1989 which were "grandfathered" in accordance with the November 1, 1989 revision of the INS Firearms Policy will be revoked in accordance with the Service Pistol Issuance Policy.

I.    Authorizations for personally-owned handguns granted between November 1, 1989 and the effective date of this policy are restricted to those handguns listed in Appendix 1A, and will be revoked in accordance with the Service Pistol Issuance Policy.

J.    Authorizations for personally-owned handguns granted after the effective date of this policy are limited to those handguns listed in Appendix 1B. The list of Service-approved, personally-owned handguns will be periodically revised by the National Firearms Unit.



K.    Authorizations for longarms, including all shotguns, rifles and submachine guns, are limited to those firearms that are listed in Appendix 1(A or B). No officer shall be authorized to train with, qualify with, or carry any type of longarm that has not been approved in writing by the appropriate Assistant Commissioner for use by officers in that program. In accordance with Subsection 18.N., Service officers are not authorized to carry or use personally-owned longarms on official duty.

L.    Service officers who are not members of a specialized tactical team which has been approved by the Special Response Team Review Board are not authorized to carry any firearm that is listed as a "Special Weapon" in Appendix 1(A or B). Special weapons are authorized for special operations only by officers specifically trained in their use and are not authorized for general use by Service officers.

M.    When acting under INS authority, Service officers shall not carry a firearm while under the influence of illegal drugs (as described in the INS Drug Free Workplace Plan) or intoxicating alcoholic beverages. Additionally, Service officers acting under INS authority shall not carry a firearm while taking prescription medication which renders them unable to safely carry a firearm.

N.    Service officers are to act in a professional manner and therefore will not carelessly or unnecessarily display firearms. The authority to carry firearms carries with it an obligation and



responsibility to exercise discipline, restraint, and good judgement in their use. Firearms will not be used to unlawfully coerce a person.

7.    <u>Deadly Force Involving Firearms</u>

**NOTE: Appendix 6 contains the Department of Justice policy which governs the use of deadly force by all Department of Justice employees. The policy statement and commentaries are to be read jointly and are considered to comprise the Department of Justice Deadly Force Policy. This Subsection is the supplemental deadly force policy negotiated between the INS and its Unions, and applies to all INS officers:**

A.    Discharging a firearm shall be done only with the intent of stopping a person or animal from continuing the threatening behavior which justifies the use of deadly force. When deadly force is justified an officer may use any level of force necessary, up to and including deadly force.

B.    Firearms may be discharged under the following circumstances:

(1)    When the officer reasonably believes that the person at whom the firearm is to be discharged possesses the means, the intent, and the opportunity of causing death or grievous bodily harm upon the officer or another person;

(2)    At the driver or other persons inside a vehicle who the officer reasonably believes presents an imminent danger of death or grievous bodily harm to the officer or another person. The hazard of an uncontrolled moving vehicle, as well as the possibility of injury to other persons concealed in the vehicle, must be taken into consideration before firing;

(3)    When confronted by an animal which presents an immediate threat to the officer or another person;

(4)    When an animal is encountered that appears to be so seriously injured that it should be destroyed to prevent additional suffering. In the case of domesticated animals, officers should attempt to contact the owner prior to destroying the animal, if feasible;

(5)    At a firearms sporting event or organized shooting competition; hunting for game and/or target practice on privately-owned land with permission of the owner; on public lands where the discharging of a firearm is not in violation of any law or ordinance and all reasonable safety procedures can be followed; or at a commercial, public, or government-owned firing range.

C.    Firearms shall not be discharged under the following circumstances:

(1)    As a warning shot.

(2)    At a moving vehicle for purposes of stopping the vehicle.

(3)    In any situation where it appears likely that an innocent person will be injured.

D.    Officers shall draw their handgun only when justified by the circumstances. Officers are not required to provide oral or written justifications for such actions unless requested by a supervisor.



TOTAL P.09

United States District Court
Southern District of Texas
ENTERED

NOV 1 8 1997

Michael N. Milby, Clerk of Court
By Deputy Clerk

AO 245 S Sheet 1 - Judgment in a Criminal Case

# United States District Court
## Southern District of Texas

NOV 1 0 1997

Michael N. Milby, Clerk

United States District Court
Southern District of Texas
FILED

UNITED STATES OF AMERICA
v.

**EDUARDO  PAYAN**

## JUDGMENT IN A CRIMINAL CASE

(For Offenses Committed On or After November 1, 1987)

Case Number:  **1:97CR00221-001**

**Guillermo Vega, Jr.**

Defendant's Attorney

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☒ was found guilty on count(s) **S8, S9, S10, S11, S12, S13 and S14**
after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 U.S.C.    654 | **Employee of the United States embezzling Government property for personal use** | 08/13/1997 | S8 S9 S10 S11 S12 S13 S14 |

**TRUE COPY I CERTIFY
ATTEST:
MICHAEL N. MILBY, CLERK
By** _____
**Deputy Clerk**

The defendant is sentenced as provided in pages 2 through **6** of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☒ Count(s)  **1, 2, 3, 4, 5, 6 and 7** _____  are dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

| | | | |
|---|---|---|---|
| Defendant's Soc. Sec. No.: | 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 | | |
| Defendant's Date of Birth: | 11/12/1943 | | |
| Defendant's USM No.: | 65129-079 | | |

Defendant's Residence Address:

**633 Windcrest**

| | | |
|---|---|---|
| **Brownsville** | **TX** | **78521** |

Defendant's Mailing Address:

**633 Windcrest**

| | | |
|---|---|---|
| **Brownsville** | **TX** | **78521** |

DCB/cb

**10/24/1997**

Date of Imposition of Judgment

Signature of Judicial Officer

**Honorable Filemon B. Vela**

**United States District Judge**

Name & Title of Judicial Officer

**11/10/97**

Date

59

AO 245B (Rev. 3/95) Sheet 2 - Imprisonment

Judgment-Page __2__ of __6__

DEFENDANT: **EDUARDO PAYAN**
CASE NUMBER: **1:97CR00221-001**

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of ____**18** month(s)____.

**on each of Counts S8 through S14, concurrently**

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ a.m./p.m.  on _____.

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____.

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
               Deputy U.S. Marshal

AO 245B (Rev. 3/95) Sheet 3 - Supervised Release

Judgment-Page __3__ of __6__

DEFENDANT: **EDUARDO PAYAN**
CASE NUMBER: **1:97CR00221-001**

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of _____ **3** _____ year(s) .
**on Counts S8 through S14, to run concurrently.**

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐ The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check, if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below) . The defendant shall also comply with the additional conditions on the attached page (if indicated below).

**See Special Conditions of Supervision - Sheet    3.01**

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245 B (Rev. 3/95)

DEFENDANT:        PA_ _N, _UARDO
CASE NUMBER:      1:97CR00221-001

## STANDARD CONDITIONS

### [Continued]

14)   if restitution has been ordered, the defendant shall make restitution as ordered by the Court and in accordance with the applicable provisions of Title 18 U.S.C. 2248, 2259, 2264, 2327, 3663, 3663A, and/or 3664.  The defendant shall also pay the assessment imposed in accordance with Title 18 U.S.C. 3013;

15)   the defendant shall notify the U. S. Probation Office of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution, fines, or special assessments.

AO 245B (Rev. 3/95) Sheet 3 - Supervised Release

DEFENDANT:      EDUARDO PAYAN
CASE NUMBER:    1:97CR00221-001

# SPECIAL CONDITIONS OF SUPERVISION

The defendant shall make restitution to the U. S. Immigration and Naturalization Service in the amount of $65,000.00 in equal monthly installments, commencing thirty (30) days from date of release from custody.

The defendant is hereby placed on notice that the court is quite concerned there has been an alarming increase of Driving While Intoxicated and illicit drug violations by persons sentenced by this court to probation or supervised release. Such violations are criminal offenses which would cause mandatory revocation of Probation/Supervised Release and subject to consequences thereof.

AO 245B (Rev. 3/95) Sheet 5, Part B - Criminal Monetary Penalties

Judgment-Page __5__ of __6__

DEFENDANT: **EDUARDO PAYAN**
CASE NUMBER: **1:97CR00221-001**

# SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A ☐ in full immediately; or

B ☐ $ _____ immediately, balance due (in accordance with C, D, or E); or

C ☐ not later than _____ ; or

D ☐ in installments to commence _____ day(s) after the date of this judgment. In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E ☒ in _____**monthly**_____ *(e.g. equal, weekly, monthly, quarterly)* installments of $ ___**1,805.56**___ over a period of __**3**__ year(s) to commence __**30**__ day(s) after the date of this judgment.

The National Fine Center will credit the defendant for all payments previously made toward any criminal monetary penalties imposed.

Special instructions regarding the payment of criminal monetary penalties:

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments are to be made to the United States Courts National Fine Center, Administrative Office of the United States Courts, Washington, DC 20544, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program. If the National Fine Center is not operating in this district, all criminal monetary penalty payments are to be made as directed by the court, the probation officer, or the United States attorney.

AO-245B (Rev. 3/95) Sheet 6 - Statement of Reasons

Judgment-Page  6  of  6

DEFENDANT:        **EDUARDO PAYAN**
CASE NUMBER:      **1:97CR00221-001**

# STATEMENT OF REASONS

☒ The court adopts the factual findings and guideline application in the presentence report.

## OR

☐ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

**Guideline Range Determined by the Court:**

Total Offense Level:        **15**

Criminal History Category:        **I**

Imprisonment Range:        **18**    to    **24**    months

Supervised Release Range:        **2**    to    **3**    years

Fine Range:  $    **4,000.00**    to $    **40,000.00**

☒ Fine waived or below the guideline range because of inability to pay.

Total Amount of Restitution:  $    **65,000.00**

☐ Restitution is not ordered because the complication and prolongation of the sentencing process resulting from the fashioning of a restitution order outweighs the need to provide restitution to any victims, pursuant to 18 U.S.C. § 3663(d).

☐ For offenses that require the total amount of loss to be stated, pursuant to Chapters 109A, 110, 110A, and 113A of Title 18, restitution is not ordered because the economic circumstances of the defendant do not allow for the payment of any amount of a restitution order, and do not allow for the payment of any or some portion of a restitution order in the foreseeable future under any reasonable schedule of payments.

☐ Partial restitution is ordered for the following reason(s):

☒ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by the application of the guidelines.

## OR

☐ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reason(s):

## OR

☐ The sentence departs from the guideline range:

☐ upon motion of the government, as a result of defendant's substantial assistance.

☐ for the following specific reason(s):

Judgment-Page __4__ of __6__

DEFENDANT:    **EDUARDO PAYAN**
CASE NUMBER:    **1:97CR00221-001**

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth on Sheet 5, Part B.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **Totals:** | $          350.00 | $ | $      65,000.00 |

☐ If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . .   $ _____

# FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _____ .

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ The interest requirement is waived.

☐ The interest requirement is modified as follows:

# RESTITUTION

☐ The determination of restitution is deferred in a case brought under Chapters 109A, 110, 110A and 113A of Title 18 for offenses committed on or after 09/13/1994, until _____ . An Amended Judgment in a Criminal Case will be entered after such determination.

☒ The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | ** Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| UNITED STATES GOVERNMENT |  | $65,000.00 |  |
| **Totals:** | $ _____ | $ _____ |  |

** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARIA T. COOKE, Individually and | ) | |
| as representative of the Estate of | ) | |
| CHESTER J. COOKE, deceased, | ) | |
| and ROSANNA CHAMPION as | ) | |
| next friend of GLENN ALEXANDER | ) | |
| COOKE, a minor, | ) | Civil Action No. B-01-188 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA. | ) | |
| | ) | |

## DECLARATION OF ALLEN R. STEWARD

I hereby declare and state that the following facts are from my personal knowledge:

1.      My name is Allen R. Steward.

2.      From 1999 to the present, I have been a Supervisory Inmate Systems Specialist for the Federal Bureau of Prisons and am one of the custodians of inmate records, including the Public Information Inmate Data records.

3.      A true and correct copy of the Public Information Inmate Data for Eduardo Payan, Federal Register No. 65129-079, is attached to this declaration.

4.      The Public Information Inmate Data record for Eduardo Payan reveals the following information:

a.      From January 28, 1998, to June 16, 1998, Mr. Payan was an inmate at the Federal Correctional Institution, Three Rivers, Texas.

b.      From June 16, 1998, to August 3, 2000, Mr. Payan was released on a Federal Writ and was in the custody of the U.S. Marshals Service.

c.    From August 3, 2000, to October 6, 2000, Mr. Payan was an inmate at the

Federal Correctional Institution, Three Rivers, Texas.

d.    From October 6, 2000, to November 16, 2000, Mr. Payan completed his

sentence at a half-way house.

e.    On November 16, 2000, Mr. Payan was released from federal custody.

FURTHER AFFIANT SAYETH NOT.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _April 15, 2002_

ALLEN R. STEWARD

2

```
   BOP5Z           *        PUBLIC INFORMATION        *     04-15-2002
 PAGE 001          *           INMATE DATA            *     13:47:33
                             AS OF 04-15-2002

REGNO..: 65129-079 NAME: PAYAN, EDUARDO

                   RESP OF: CHN / GOOD CONDUCT TIME RELEASE
                   PHONE..: 713-718-4781    FTS: 713-718-4781
                                         RACE/SEX...: WHITE / MALE
FBI NUMBER.: 190328VA0                    DOB/AGE....: 11-12-1943 / 58
ACTUAL RELEASE METH.: GCT REL
ACTUAL RELEASE DATE.: 11-16-2000
--------------------------- ADMIT/RELEASE HISTORY ---------------------------
 FCL    ASSIGNMENT  DESCRIPTION              START DATE/TIME STOP  DATE/TIME
 CHN    GCT REL     GOOD CONDUCT TIME REL (CCCA)  11-16-2000 0815 CURRENT
 CHN    A-DES       DESIGNATED, AT ASSIGNED FACIL 10-06-2000 1450 11-16-2000 0815
 5-D    RELEASE     RELEASED FROM IN-TRANSIT FACL 10-06-2000 1550 10-06-2000 1550
 5-D    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 10-06-2000 1015 10-06-2000 1550
 TRV    FURL TRANS  FURL W/UNESCORTED TRF TO A CCC 10-06-2000 0915 10-06-2000 0915
 TRV    A-DES       DESIGNATED, AT ASSIGNED FACIL 08-03-2000 1100 10-06-2000 0915
 P98    RELEASE 08  RELEASED FROM IN-TRANSIT, AUG  08-03-2000 1200 08-03-2000 1200
 P98    A-ADMIT 10  ADMITTED TO IN-TRANSIT, OCT    10-14-1998 0530 08-03-2000 1200
 5-D    RELEASE     RELEASED FROM IN-TRANSIT FACL  10-14-1998 0530 10-14-1998 0530
 5-D    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 06-16-1998 1445 10-14-1998 0530
 TRV    FED WRIT    RELEASE ON FEDERAL WRIT        06-16-1998 1345 07-01-1998 1600
 TRV    A-DES       DESIGNATED, AT ASSIGNED FACIL  01-28-1998 1145 06-16-1998 1345
 1-E    RELEASE     RELEASED FROM IN-TRANSIT FACL  01-28-1998 1245 01-28-1998 1245
 1-E    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 12-02-1997 1208 01-28-1998 1245
 CHN    ADMIN REL   ADMINISTRATIVE RELEASE         12-02-1997 1108 12-02-1997 1108
 CHN    A-ADMIN     ADMINISTRATIVE ADMISSION       12-02-1997 1107 12-02-1997 1108


 G0002       MORE PAGES TO FOLLOW . . .
```

```
BOP5Z         *        PUBLIC INFORMATION        *    04-15-2002
PAGE 002      *            INMATE DATA           *    13:47:33
                       AS OF 11-16-2000

REGNO..: 65129-079 NAME: PAYAN, EDUARDO

                RESP OF: CHN / GOOD CONDUCT TIME RELEASE
                PHONE..: 713-718-4781   FTS: 713-718-4781
THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  11-16-2000 VIA GCT REL

-----------------------PRIOR JUDGMENT/WARRANT NO: 010 -----------------------

COURT OF JURISDICTION...........: TEXAS, SOUTHERN DISTRICT
DOCKET NUMBER...................: 1:97CR00221-001
JUDGE...........................: VELA
DATE SENTENCED/PROBATION IMPOSED: 10-24-1997
DATE COMMITTED..................: 01-28-1998
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

                  FELONY ASSESS  MISDMNR ASSESS  FINES          COSTS
NON-COMMITTED.: $350.00         $00.00          $00.00         $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT: $65,000.00

--------------------------PRIOR OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  102
OFF/CHG: 18:654 EMPLOYEE OF THE U.S. EMBEZZLING GOVERNMENT PROPERTY
         FOR PERSONAL USE

  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:   18 MONTHS
  TERM OF SUPERVISION............:    3 YEARS
  CLASS OF OFFENSE...............: CLASS C FELONY
  DATE OF OFFENSE................: 08-13-1997

G0002      MORE PAGES TO FOLLOW . . .
```

```
   BOP5Z        *        PUBLIC INFORMATION        *     04-15-2002
PAGE 003 OF 003 *           INMATE DATA             *     13:47:33
                          AS OF 11-16-2000

REGNO..: 65129-079 NAME: PAYAN, EDUARDO

                RESP OF: CHN / GOOD CONDUCT TIME RELEASE
                PHONE..: 713-718-4781   FTS: 713-718-4781
-------------------------PRIOR COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 10-04-2000 AT TRV AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:   010 010

DATE COMPUTATION BEGAN..........: 10-24-1997
TOTAL TERM IN EFFECT............:    18 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     1 YEARS      6 MONTHS
EARLIEST DATE OF OFFENSE........: 08-13-1997

JAIL CREDIT.....................:   FROM DATE     THRU DATE
                                    06-26-1997    06-26-1997
                                    08-16-1997    10-23-1997

INOPERATIVE TIME.........: REASON   FROM DATE     THRU DATE
                           APPEAL   07-02-1998    06-13-2000

TOTAL PRIOR CREDIT TIME.........: 70
TOTAL INOPERATIVE TIME..........: 713
TOTAL GCT EARNED AND PROJECTED..: 70
TOTAL GCT EARNED................: 70
STATUTORY RELEASE DATE PROJECTED: 11-16-2000
SIX MONTH /10% DATE.............: 10-01-2000
EXPIRATION FULL TERM DATE.......: 01-25-2001


ACTUAL SATISFACTION DATE........: 11-16-2000
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: CHN
ACTUAL SATISFACTION KEYED BY....: ADF

DAYS REMAINING..................: 70
FINAL PUBLIC LAW DAYS...........: 0




S0039      ALL CURRENT COMPS ARE SATISFIED
```

## CERTIFICATE OF SERVICE

I hereby certify that on *April 18, 2002*, I caused to be served upon the following counsel a true and correct copy of the United States' Reply Memorandum In Support of Its Motion To Dismiss Or, In the Alternative, For Summary Judgment, including three exhibits marked Tabs 1, 2, and 3, via First Class Mail to:

Barry R. Benton
Attorney at law
284 Ebony Avenue
Brownsville, Texas  78520


Stephen E. Handler

**U.S. Department of Justice**

Civil Division




FED - EX
United States District Court
Southern District of Texas
RECEIVED

APR 1 9 2002

Michael N. Milby, Clerk

*Washington, D.C. 20530*

JA:PJP:SEHandler
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

Telephone No.
(202) 616-4279

April 18, 2002

Michael Milby
Clerk, U.S. District Court
U.S. District Clerk's Office
600 E. Harrison St.
Brownsville, Texas 78520

       Attention:    Juan Barbosa
                  Deputy Clerk

      Re:   *Marie T. Cooke v. United States*
              Civil Action No. B-01-188

Dear Sir:

    Enclosed is the original and two copies of the United States' Reply Memorandum In Support Of Its Motion To Dismiss Or, In The Alternative, For Summary Judgment. Please file the original and return a file-stamped copy to me in the enclosed self-addressed envelope. Thank you very much for your assistance. Please call if you have any questions.

                Sincerely yours,

                Stephen E. Handler
                  Trial Attorney
           Civil Division, Torts Branch

Enclosures
cc: counsel of record