IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JUN 2 1 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| MARIA T. COOKE, ET AL., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. No. B-01-188 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Defendant. | § | |

**ORDER**

BE IT REMEMBERED that in its Order of May 3, 2002 [Dkt. No. 14], the Court **GRANTED** the United States' Motion to Dismiss, or in the Alternative for Summary Judgment [Dkt. Nos. 7 & 8]. This memorandum provides the Court's reasoning for that Order.

1.   Facts and Procedural History

On April 18, 1998, Glenn Cooke was shot and killed by John Garza. The weapon used in the killing had been issued to John Garza's father, Pablo Garza, by the Immigration and Naturalization Service ("INS"), where Pablo Garza was employed. Plaintiffs assert that the United States failed to properly supervise Pablo Garza and prevent him from violating INS rules concerning proper storage of the firearm, which they allege was made available to John Garza by Pablo Garza. Plaintiffs allege that the following acts or omissions give rise to governmental liability under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b):

1. INS' failure to enforce its rules regarding safe use, carrying, and storage of deadly weapons issued to its employees.
2. INS' failure to supervise Pablo Garza;
3. Respondeat superior for
   a) Pablo Garza's negligence; and
   b) negligent entrustment of the weapon to Pablo Garza.[1]

---

[1]   The complaint states that:
The pistol used by John Paul Garza was owned by the government and issued to the

The United States argues that the Court lacks subject matter jurisdiction over this case. The United States moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), or alternatively, for summary judgment [Dkt. Nos. 7 & 8]. Also before the Court are Plaintiffs' response [Dkt. No. 12], and the United States' reply [Dkt. No. 13].

## 2.　Proper Categorization of Defendant's Motion

As a preliminary matter, the Court must decide how to characterize Defendant's motion. Defendant characterizes its motion to dismiss as being for lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)). However, the Court notes that:

> A Rule 12(b)(1) motion most typically is employed when there is no diversity of citizenship between the parties and the claim asserted by Plaintiff does not involve a federal question or when the amount in controversy does not exceed the required jurisdictional amount. . . . Subject matter jurisdiction should not be confused with . . . .a motion to dismiss under Rule 12(b)(6) to dismiss for failure to state a claim for relief under federal or state law.
>
> 　　　　　　　Wright & Miller, 5A Federal Practice & Procedure § 1350.

Defendant's motion states that the United States cannot be held liable because Pablo Garza was not acting within the scope of his employment at the time of his son's action, and also because "the facts alleged in the Complaint, even if true, do not establish" the necessary requirements for liability of the United States. [Dkt. No. 8 at 3]. The motion appears to assert that Plaintiff has failed to state a claim. Because Defendant appears to have miscategorized its motion to dismiss, the Court views it under Rule 12(b)(6), which provides, "[i]f on a motion asserting the defense numbered

---

assailant's father, Pablo Garza, an employee of [INS] at Bayview, Texas. Pablo Garza made the weapon available to John Paul Garza generally and specifically at the time of the shooting when he knew that conflict between John Paul Garza and Glen Cooke had been brewing for days. . . . .
　　[T]he government negligently failed to supervise Pablo Garza and to properly use, handle, and store the weapon in question under the doctrine Respondeat Superior. The government was further negligent in failing to enforce its own rules regarding safe use and storage of its firearms.
　　　　　　　　　　　　　　　　　[Dkt. No. 1 at 3].

2

(6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . ." Id. Both sides having presented matters outside the pleadings, the Court treats this motion as one for summary judgment.

3. INS' Failure to Enforce its Rules

Plaintiff's contention that INS failed to enforce its own rules regarding safe use, carrying and storage of weapons is based on the affidavit of Eduardo Payan [Dkt. No. 12 Ex. 2]. Payan states in his affidavit that he worked from 1988 to 1994 at the Bayview facility, where part of his duties included training new employees in the rules and regulations regarding safe use, of which he has knowledge and which are attached to the exhibit [Dkt. No. 12 Ex. 2 attachments]. One of the attached documents, both of which are regulations regarding weapons control, is not dated; the other is dated July 15, 1991. The evidence in the record is that the rules in these documents were superseded by INS Firearms Policy which went into effect August 8, 1996, which states that Detention Enforcement Officers may carry firearms during both on-and-off-duty hours. [Dkt. No. 13 Attachment 1]. The INS Firearms Policy was in effect when the events in question took place. Payan does not show that he has personal knowledge as to INS firearms regulations after 1994, and the Court **STRIKES** his affidavit for lack of personal knowledge, except to the extent that it states that Pablo Garza was a detention officer during the time that Payan worked there.

Plaintiffs have failed to offer any evidence of INS' negligent failure to enforce its own rules, and therefore summary judgment is **GRANTED** for Defendant on this claim.

4. INS' Failure to Supervise Garza

Plaintiffs argue that INS had a duty to control its officer even when he was not on duty, citing Otis Engineering Corp. v. Clark, 668 S.W.2d 307 (Tex. 1983). In that case, the Court summarized its conclusion, stating: "when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty

to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others." Id. at 311. The defendant in Otis was an employee who was *intoxicated on liquor because he had been drinking on the job, as was his habit.* Id. at 308. The defendant's intoxication on the day in question was made known to his supervisor by another employee. Id. The supervisor escorted the employee to the parking lot after work, and after asking the employee if he was all right, allowed him to drive home, whereupon the employee killed two individuals in a car accident. Id.

All of the cases cited by the Otis court involved intoxicated employees and employers who were directly aware of the intoxication and allowed torts to happen, which gave rise to a special duty to control that employee. Id. at 310-311. Otis has been limited to situations involving an employer's special duty to restrain a visibly intoxicated employee from harming third persons. See Crider v. United States, 885 F.2d 294, 296 (5th Cir. 1989). In any event, Plaintiffs have offered no evidence of any employee incapacity, through intoxication or otherwise, nor have Plaintiffs offered any evidence that Pablo Garza was dangerous in some way, and that INS knew of such danger. See Restatement of Torts § 319 ("One who takes charge of a third person *whom he knows or should know to be likely to cause bodily harm to others if not controlled* is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm) (emphasis added) cited in Otis 668 S.W.2d at 311 n.2.

Absent any evidence that INS had a special duty to control Garza's actions while he was off duty, summary judgment is **GRANTED** for Defendant on this claim.

### 5.   Respondeat Superior Under FTCA

Defendant argues that FTCA only subjects the United States to liability where the employee in question was acting within the scope of his employment.
FTCA states:

> Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States,

> for money damages . . . for injury or loss of property, personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
> 28 U.S.C. § 1346(b).

Whether an employee acts within the scope of his employment is determined by the law of the state in which the incident or omission occurred. Weaver v. United States Coast Guard, 857 F. Supp. 539, 543 n. 4 (S.D.Tx. 1994) aff'd 53 F.3d 1282 (5th Cir. 1995). In Texas, the acts of the employee must fall within the scope of the employment in order for the employer to be liable. Drooker v. Saeilo Motors, 756 S.W.2d 394, 396 (Tex. App. 1998). The conduct in question must be a) within the general authority given to the employee; b) in furtherance of the employer's business; and c) for the accomplishment of the object for which the employee was employed. Mata v. Andrews Transport, 900 S.W.2d 363, 366 (Tex. App. 1995).

A.   Respondeat superior liability through Pablo Garza

Plaintiffs allege that INS is liable for Pablo Garza's entrustment of the weapon to his son. However, Plaintiffs do not offer any evidence of such entrustment. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Because Plaintiffs offer no evidence of Pablo Garza entrusting the weapon to his son, the Court does not reach the issue of whether Pablo Garza was acting within the general authority given to him by INS when he allegedly entrusted it. Therefore INS is not subject to respondeat superior liability for his alleged actions and summary judgment for Defendant is **GRANTED**.

B.   Respondeat Superior Liability Through Pablo Garza's Supervisor

Plaintiffs also allege respondeat superior liability through the supervisor who

entrusted the weapon to Pablo Garza. Plaintiffs state that their negligent supervision claim "is not focused on the behavior of Pablo Garza, but on the negligence of his supervisor, who in essence gave him the gun and never saw that he was following important rules" [Dkt. No. 12 at 6-7]. Plaintiffs offer no evidence as to the identity of the supervisor who allegedly entrusted the weapon to Pablo Garza, what that person's duties were as to Pablo Garza, what rules that person was supposed to ensure were being followed, or how those duties were violated by entrusting this weapon to Pablo Garza. Plaintiffs have therefore not offered any evidence of negligence on the part of a supervisor which would give rise to the liability of INS on a respondeat superior theory, and summary judgment is **GRANTED** for Defendant on this claim.

In sum, summary judgment for Defendant is **GRANTED** on all claims.

DONE this 21st day of June, 2002, at Brownsville, Texas.

Hilda G. Tagle
United States District Judge